The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Monica Marchetti-Brock

**(b)** County of Residence of First Listed Plaintiff __Philadelphia County__
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jonathan D. Gilman, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102, 215-545-7676

## DEFENDANTS

City of Philadelphia

County of Residence of First Listed Defendant __Philadelphia County__
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e et seq.; 42 U.S.C. §1983 et seq.; 43 P.S. §951 et seq.; Phila. Code § 9-1100, et seq.

Brief description of cause:
Plaintiff was discriminated against because of her sex and retaliated against because of her complaints of discrimination and retaliation.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE 12/03/2025

SIGNATURE OF ATTORNEY OF RECORD *(signature)*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Philadelphia, PA _____

---

**RELATED CASE IF ANY:** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  **see certification below**
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases:  *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Monica Marchetti-Brock | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| City of Philadelphia | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( X )

| | | |
|---|---|---|
| 12/03/2025 | *[signature]* | Plaintiff, Monica Marchetti-Brock |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-827-5101 | gilman@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MONICA MARCHETTI-BROCK<br>Philadelphia, PA 19114<br><br>           Plaintiff,<br>     v.<br><br>CITY OF PHILADELPHIA<br>Philadelphia, PA 19102<br><br>           Defendant. | CIVIL ACTION NO.:<br><br>**COMPLAINT AND JURY TRIAL<br>DEMAND** |

## I.     <u>INTRODUCTION</u>

Plaintiff, Monica Marchetti-Brock ("Plaintiff"), brings claims against her former employer, City of Philadelphia ("Defendant"). Defendant discriminated against Plaintiff because of her sex, including, without limitation, by subjecting her to a hostile work environment and failing to promote her/select her for a position that became available on multiple occasions, and retaliated against her because of her complaints of sex discrimination and retaliation. Defendant failed to investigate Plaintiff's complaints or remedy or prevent the discriminatory, hostile, and retaliatory work environment to which she was subjected. The discriminatory and/or retaliatory animus that Defendant harbored toward Plaintiff ultimately led it to terminate her employment.

Plaintiff now brings claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*. ("Title VII"); the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"); and the Philadelphia Fair Practices Ordinance, Phila. Code §9-1101, *et seq.* ("PFPO"). Because Defendant's conduct has also deprived Plaintiff of her constitutional rights under the Equal Protection Clause of the Constitution, Plaintiff also brings claims pursuant to 42 U.S.C. §1983 ("Section 1983"). Plaintiff seeks all appropriate relief,

1

including back-pay, front-pay, compensatory damages, punitive damages, attorneys' fees and costs, and any other available statutory relief that this Court deems appropriate.

II. **PARTIES**

1. Plaintiff, Monica Marchetti-Brock, is an individual and a citizen of the Commonwealth of Pennsylvania, residing therein.

2. Plaintiff is female.

3. Defendant, City of Philadelphia, is a political subdivision of the Commonwealth of Pennsylvania, with a principal place of business located at 1515 Arch Street, Philadelphia, PA 19102.

4. Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

5. At all times material hereto, Plaintiff worked out of Defendant's offices or her home, both located in Philadelphia, Pennsylvania.

6. At all times material hereto, Defendant employed fifteen (15) or more employees.

7. At all times material hereto, Defendant's policies, customs, and practices in its Department of Labor were discriminatory towards females.

8. At all times material hereto, Defendant instituted, acquiesced in, ratified, and/or took action against Plaintiff and other females.

9. At all times material hereto, Defendant acted by and through authorized agents and/or employees acting within the course and scope of their employment with Defendant and in furtherance of its business.

10. At all times material hereto, Defendant was an employer within the meaning of the statutes which form the basis of this matter.

11.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

12.     At all times material hereto, Defendant acted under color of state law.

**III.     JURISDICTION AND VENUE**

10.     The causes of action which form the basis of this matter arise under Title VII, Section 1983, the PHRA, and the PFPO.

11.     The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

12.     The District Court has jurisdiction over Count II (Section 1983) pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1333.

13.     The District Court has supplemental jurisdiction over Count III (PHRA) and Count IV (PFPO) pursuant to 28 U.S.C. §1367.

14.     Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) and 42 U.S.C. §2000e-5(f).

15.     On or about May 7, 2024, Plaintiff filed a Charge of Discrimination with the Philadelphia Commission on Human Relations ("PCHR") that was dual-filed with the Equal Employment Opportunity Commission ("EEOC") complaining of the acts of discrimination and retaliation alleged herein. Attached hereto and incorporated herein and marked as Exhibit "1" is a true and correct copy of the Charge (EEOC Charge No. 17F-2024-60747) with personal identifying information redacted.

16.     On or about May 8, 2024, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") that was dual-filed with the Equal Employment Opportunity Commission ("EEOC") complaining of the acts of discrimination and retaliation alleged herein.

Attached hereto and incorporated herein and marked as Exhibit "2" is a true and correct copy of the Charge (EEOC Charge No. 17F-2024-60747) with personal identifying information redacted.

17.     On or about September 5, 2025, the EEOC issued to Plaintiff a Notice of Right to Sue for the above-referenced Charges. Attached hereto and marked as Exhibit "3" is true and correct copies of that Notice (with personal identifying information redacted).

18.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

### IV.    FACTUAL ALLEGATIONS

19.     Plaintiff was hired by Defendant on or about December 1, 2013

20.     Plaintiff last held the position of First Deputy Director.

21.     Plaintiff consistently performed her job duties in a highly competent manner.

22.     Plaintiff last reported to Perritti Divirgilio (male), Director of Labor.

23.     Divirgilio reported to Sincere Harris (female), Deputy Mayor.

24.     Before reporting to Divirgilio, Plaintiff reported to Basil Merenda (male), Director of Labor.

25.     Before reporting to Merenda, Plaintiff reported to Richard Lazer (male), Deputy Mayor of Labor / Director of Labor.

26.     On or about November 3, 2022, in a meeting with Lazer, after Plaintiff learned that he was resigning, Plaintiff expressed her interest in and qualifications for the soon to be open Deputy Mayor of Labor / Director of Labor.

27.     Plaintiff was qualified for the Deputy Mayor of Labor / Director of Labor position.

28.     The opening for the Deputy Mayor of Labor / Director of Labor position was not posted.

4

29.    Lazer stated to Plaintiff that Defendant would likely select Merenda (male) for the position.

30.    When Plaintiff asked why she would not be selected for the position, Lazer stated that he would speak with Christina Hernandez (female), Chief of Staff, Mayor's Office.

31.    Lazer told Plaintiff that Defendant wanted a male employee in the Deputy Mayor of Labor / Director of Labor position.

32.    On November 4, 2022, in an email to Hernandez, Plaintiff expressed her interest in and qualifications for the soon to be open Deputy Mayor of Labor / Director of Labor position.

33.    On November 30, 2022, in a meeting with Hernandez, Defendant failed to promote Plaintiff to Deputy Mayor of Labor / Director of Labor.

34.    The stated reason why Plaintiff was not promoted to Deputy Mayor of Labor / Director of Labor was that James Kenney (male), Mayor, felt more comfortable with Merenda (male) filling the position.

35.    Hernandez stated to Plaintiff that she had spoken with Kenney, that Defendant was not going to fill the Deputy Mayor role, that Meranda would be the Director of Labor, and that Plaintiff would remain in her First Deputy Director position.

36.    Instead of promoting Plaintiff, Defendant selected Merenda (male) for the open position.

37.    Plaintiff was more qualified and possessed more relevant experience for the position than Merenda, the external, male candidate who was selected instead of Plaintiff.

38.    Plaintiff received no explanation, including the selection criteria, as to why she was not promoted and Merenda—the less qualified, less experienced, external, male candidate—was selected instead.

39.    Defendant failed to promote Plaintiff to Director of Labor because of her sex.

40.    In January 2023, Plaintiff began reporting to Merenda.

41.    Merenda treated female employees, including Plaintiff, differently and worse, and in a more hostile and dismissive manner, than he treated male employees.

42.    Plaintiff was ignored.

43.    Plaintiff was excluded from meetings related to her job duties.

44.    Plaintiff was excluded from communications related to her job duties.

45.    Plaintiff was dismissed.

46.    Plaintiff was circumvented.

47.    Plaintiff was undermined.

48.    Plaintiff was yelled at.

49.    Plaintiff was unjustly criticized for not doing her job.

50.    Plaintiff's performance was unjustly criticized.

51.    Plaintiff complained of sex discrimination in connection with Merenda in conversations with:

    a.    Andrew Richman (male), Chair, Compliance, Investigations, and Privacy;

    b.    Nicole Morris (female), Chief Deputy City Solicitor;

    c.    Renee Garcia (female), City Solicitor;

    d.    Camille Duchaussee (female), then-Deputy Director Employee Relations;

    e.    Debra Mahler (female), then-Deputy Mayor;

    f.    Stephanie Tipton (female), Chief Administrative Officer;

    g.    Sara Stevenson (female), Integrity Officer;

    h.    Hernandez;

      i.    Michael Zaccagni (male), Human Resources Director;

      j.    Cara Leheny (female), Divisional Deputy City Solicitor;

      k.    Lazer (male);

      l.    Rob Dubow (male), Finance Director;

      m.  Tumar Alexander (male), Managing Director; and

      n.    Mariela Suarez (female), Deputy Director, Labor Relations.

52.     In the above-referenced conversations, Plaintiff stated that Merenda had a problem with women.

53.     Plaintiff also described how she was treated compared to how male employees were treated, including that Merenda ignored what female employees said and focused on what male employees said.

54.     In April 2023, in a meeting with Anne Kane (female), Outside Investigator, Plaintiff complained of sex discrimination in connection with Merenda.

55.     Plaintiff again stated that Merenda had a problem with women.

56.     Plaintiff described how she and Suarez were treated compared to how male employees were treated, including that Merenda yelled at her, ignored what female employees said, and focused on what male employees said.

57.     Suarez told Plaintiff that she met with Kane and also complained of sex discrimination in connection with Merenda.

58.     On September 26, 2023, in a meeting with Richman, Hernandez, and Kristin Bray (female), Chief Legal Counsel, Mayor's Office, Hernandez stated that the investigation into Plaintiff's complaints showed no sex discrimination under the law but, instead, personality and leadership conflicts.

59.     Hernandez stated that the investigator found that Merenda had an implicit bias in how he treated women, specifically Suarez and Plaintiff, and recommended that Merenda attend implicit bias training.

60.     On October 12, 2023, in a phone call with Morris, she stated that Merenda had been warned about his behavior.

61.     Following the above, Plaintiff learned that Defendant would be promoting Merenda and the Director of Labor position would become open.

62.     In or about December 2023, following the above, Plaintiff applied for the Director of Labor position.

63.     Plaintiff was qualified for the position.

64.     In or about December 2023, Plaintiff expressed her interest in and qualifications for the Director of Labor position to multiple employees, including Hernandez.

65.     On February 8, 2024, in a meeting with Harris, Defendant failed to promote her to Director of Labor.

66.     The stated reason why Defendant did not promote Plaintiff to the Director of Labor position was that this was the Mayor's decision.

67.     Harris stated that Defendant's decision did not have anything to do with Plaintiff's performance.

68.     Instead of promoting Plaintiff, Defendant selected Divirgilio (male) for the Director of Labor position.

69.     Plaintiff told Harris that Divirgilio did not have the experience that she had.

70.     In response, Harris stated that Lazer did not have experience when he was selected for the position either.

8

71.     Plaintiff was more qualified and more experienced for the position than Divirgilio, the noncomplaining, male employee who was selected instead of Plaintiff.

72.     Plaintiff received no explanation, including the selection criteria, as to why Plaintiff was not promoted and Divirgilio—the less qualified and less experienced, noncomplaining, male employee—was selected instead.

73.     Defendant failed to promote Plaintiff to Director of Labor because of her sex and/or her engaging in protected activity.

74.     On February 12, 2024, in a phone call between Plaintiff and Candace Chewning (female), Director of Worker Protection, Chewning stated that she heard Merenda ask Divirgilio what he was going to do with Plaintiff and Chewning.

75.     On February 13, 2024, in a phone call between Plaintiff and Harris, Harris instructed Plaintiff to assist in acclimating Divirgilio to the Director of Labor position.

76.     During the call, Plaintiff complained of retaliation based on her complaints of sex discrimination in connection with Merenda having asked Divirgilio what he was going to do with she and Chewning.

77.     In response, Harris stated that it was common for departing Directors to give their recommendations to the new Director on their way out.

78.     On February 13, 2024, in an email to Richman, Plaintiff asked when she would be receiving a closure letter, per Defendant's policy, regarding the investigation into her sex discrimination complaints.

79.     Plaintiff asked Richman to send her the closure letter, as she had not received anything following the closure meeting in September 2023.

80.     On February 26, 2024, in a letter from Richman, he stated the following: "Pursuant to the City of Philadelphia Sexual Harassment Prevention policy, the purpose of this letter is to confirm, in writing, that it has been determined that no violation of the afore-mentioned policies occurred and that this matter is now closed."

81.     On February 27, 2024, in an email to Richman, Plaintiff stated the following: "My understanding was that there were in fact findings, yet that the investigator did not think they rose to the level of gender discrimination under the law, not our policy. During the conversation, there were findings of bias towards me and other women, specifically Mariela. As you are aware, our policy holds our leaders to a higher standard than the law. It is misleading to say there are no findings under our policy."

82.     Plaintiff received no response to her above email.

83.     On March 1, 2024, in a meeting with Zaccagni and Harris, Defendant terminated Plaintiff's employment, effective April 2, 2024.

84.     The stated reason for Plaintiff's termination was that Defendant was going in a different direction.

85.     Plaintiff asked if the termination had anything to do with her performance, and Defendant said it did not.

86.     When Plaintiff asked if her termination had anything to do with her sex discrimination complaints, Defendant refused to answer the question.

87.     Defendant did not deny that Plaintiff was terminated because she had complained of sex discrimination.

88.     On March 10, 2024, in a phone call between Plaintiff and Divirgilio, Divirgilio stated that he only found out that Plaintiff was being terminated twenty (20) minutes before her

termination meeting, and that he had refused to be in the termination meeting because he did not want Plaintiff to be terminated and was not involved in the decision to terminate her employment.

89.     Divirgilio stated that he was instructed to have Plaintiff train other employees to do the work that she had been doing.

90.     On April 3, 2024, Plaintiff received a letter dated March 1, 2024, signed by Harris, which stated the following: "[W]e feel that it is now best that we make additional changes to the Office of Labor Relations, therefore, we will be separating you from City employment."

91.     On April 3, 2024, Defendant terminated Suarez's employment, effective April 12, 2024.

92.     Before Plaintiff engaged in protected activity, she had no indication that her job was in jeopardy.

93.     Plaintiff had no disciplinary or performance issues throughout her employment.

94.     Plaintiff was the only employee who was terminated on April 2, 2024.

95.     Plaintiff had no opportunity to remain employed with Defendant.

96.     Defendant assigned Plaintiff's job duties and responsibilities to noncomplaining and/or male employees.

97.     Plaintiff was more qualified and experienced to perform her job duties and responsibilities than the noncomplaining and/or male employees to whom her job duties and responsibilities were assigned.

98.     Defendant's comments and conduct evidence a bias against female and/or complaining employees.

99.     Other employees have complained of sex discrimination and retaliation at Defendant.

11

100.    Merenda remains employed by Defendant.

101.    Plaintiff was subjected to severe and/or pervasive conduct that interfered with her ability to perform her job duties and was not welcomed by Plaintiff, thereby creating a hostile work environment.

102.    The conduct to which Plaintiff was subjected was so severe and/or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile and/or abusive.

103.    Defendant did not take any steps to remediate the hostile work environment to which Plaintiff was subjected.

104.    Defendant failed to remedy or prevent the sex discrimination and retaliation to which Plaintiff was subjected.

105.    Defendant failed to investigate Plaintiff's sex discrimination complaints.

106.    The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

107.    Plaintiff's sex was a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff, including, without limitation, in connection with subjecting her to a hostile work environment, failing to promote her on multiple occasions, and terminating her employment.

108.    Plaintiff's complaints of sex discrimination were motivating and/or determinative factors in Defendant's discriminatory treatment of Plaintiff, including, without limitation, in connection with subjecting her to a hostile work environment, failing to promote her on multiple occasions, and terminating her employment.

109.    Defendant's sex discriminatory, harassing, and retaliatory conduct toward Plaintiff have caused her emotional distress.

110.    As a direct and proximate result of Defendant's discriminatory, harassing, and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

111.    Defendant acted with malice, reckless indifference, and/or deliberate indifference to Plaintiff's protected rights.

## COUNT I – TITLE VII

112.    Plaintiff incorporates by reference the foregoing paragraphs as set forth herein in their entirety.

113.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated Title VII.

114.    Said violations were done with malice and/or reckless indifference and warrant the imposition of punitive damages.

115.    As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

116.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

117.    Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

13

118.    No previous application has been made for the relief requested herein.

## COUNT II – SECTION 1983

119.    Plaintiff incorporates by reference the foregoing paragraphs as set forth herein in their entirety.

120.    Defendant's discriminatory and retaliatory conduct, as set forth herein, deprived Plaintiff of equal protection under the law as guaranteed by the Fourteenth Amendment of the United States Constitution.

121.    Defendant's violations of the constitution included policies, practices, and/or customs in its Department of Labor to treat female employees less favorably than male employees, which were committed, directed, implemented, and/or ratified by officials of Defendant in supervisory capacities with policymaking and decision-making authority.

122.    As a direct and proximate result of Defendant's acts and conduct which caused and continue to cause Plaintiff to be denied equal protection under the law, Plaintiff has suffered and will continue to suffer those injuries, damages, and losses set forth herein, and has incurred and will incur attorneys' fees and costs.

123.    The wrongful acts and conduct of Defendant were done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

## COUNT III – PHRA

124.    Plaintiff incorporates by reference the foregoing paragraphs as set forth herein in their entirety.

125.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated the PHRA.

126.    Said violations were intentional and willful.

14

127.    As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

128.    Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

129.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

130.    No previous application has been made for the relief requested herein.

## **COUNT IV – PFPO**

131.    Plaintiff incorporates by reference the foregoing paragraphs as set forth herein in their entirety.

132.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated the PFPO.

133.    Said violations were intentional and willful, and warrant the imposition of punitive damages.

134.    As a direct and proximate result of Defendant's violations of the PFPO, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

135.    Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

136.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

137.    No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

(a) declaring the acts and practices complained of herein to be a violation of Title VII;

(b) declaring the acts and practices complained of herein to be a violation of Section 1983;

(b) declaring the acts and practices complained of herein to be in violation of the PHRA;

(b) declaring the acts and practices complained of herein to be in violation of the PFPO;

(c) entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

(d) enjoining and restraining permanently the violations alleged herein;

(e) awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits, and earning capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendant's discriminatory, retaliatory, and unlawful misconduct;

(f) awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

(g) awarding punitive damages to Plaintiff;

(h) awarding Plaintiff costs of this action, together with reasonable attorney's fees;

(i) awarding Plaintiff such other damages as are appropriate under Title VII, Section 1983, the PHRA, and the PFPO; and

(j) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated: December 3, 2025          BY:    *s/Jonathan D. Gilman*

Jonathan D. Gilman, Esquire
**CONSOLE MATTIACCI LAW LLC**
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
Telephone: (215) 545-7676
Facsimile: (215) 405-2900

*Attorney for Plaintiff, Monica Marchetti-Brock*

17

# Exhibit 1

CITY OF PHILADELPHIA
PHILADELPHIA COMMISSION ON HUMAN RELATIONS

## COMPLAINT

COMPLAINANT:                                    :
                                                :
**MONICA MARCHETTI-BROCK**                      :        Docket No.
                                                :
v.                                              :
                                                :
RESPONDENT:                                     :
                                                :
**CITY OF PHILADLEPHIA**                        :
                                                :

1. The Complainant herein is:

   Name:        Monica Marchetti-Brock

   Address:     <span style="background:black;color:red">redacted</span>
                Philadelphia, PA 19114

2. The Respondent herein is:

   Name:        City of Philadelphia

   Address:     1515 Arch Street
                Philadelphia, PA 19102

3. I, Monica Marchetti-Brock, the Complainant herein, allege that I was subjected to unlawful discrimination because of my sex (female) and retaliation because of my engaging in protected activity, as set forth below.

   **Discrimination and Retaliation**

   **A. I specifically allege:**

   [1]        I was hired by Respondent on or about December 1, 2013

   [2]        I last held the position of First Deputy Director.

[3]        I consistently performed my job duties in a highly competent manner.

[4]        I last reported to Perritti Divirgilio (male), Director of Labor.  Divirgilio reported to Sincere Harris (female), Deputy Mayor.

[5]        Before reporting to Divirgilio, I reported to Basil Merenda (male), Director of Labor.

[6]        Before reporting to Merenda, I reported to Richard Lazer (male), Deputy Mayor of Labor / Director of Labor.

[7]        On or about November 3, 2022, in a meeting with Lazer, after I learned that he was resigning, I expressed my interest in and qualifications for the soon to be open Deputy Mayor of Labor / Director of Labor.  I was qualified for the position.  The position was not posted.  Lazer stated that Respondent would likely select Merenda (male) for the position.  I asked why I would not be selected for the position.  Lazer stated that he would speak with Christina Hernandez (female), Chief of Staff, Mayor's Office.

[8]        Lazer told me that Respondent wanted a male employee in the Deputy Mayor of Labor / Director of Labor position.

[9]        On November 4, 2022, in an email to Hernandez, I expressed my interest in and qualifications for the soon to be open Deputy Mayor of Labor / Director of Labor position.

[10]       On November 30, 2022, in a meeting with Hernandez, Respondent failed to promote me to Deputy Mayor of Labor / Director of Labor.  The stated reason was that James Kenney (male), Mayor, felt more comfortable with Merenda (male).  She stated that she spoke with Kenney, Respondent was not going to fill the Deputy Mayor role, Meranda would be the Director of Labor, and I would remain in my First Deputy Director position.  Instead of

promoting me, Respondent selected Merenda (male). I was more qualified and experienced for the position than the external, male candidate who was selected instead of me.

[11]      I received no explanation, including the selection criteria, as to why I was not promoted and the less qualified and experienced, external male candidate was selected instead.

[12]      Respondent failed to promote me to Director of Labor because of my sex.

[13]      In January 2023, I began reporting to Merenda.

[14]      Merenda treated female employees, including me, differently and worse, and in a more hostile and dismissive manner, than he treated male employees.

[15]      I was ignored.

[16]      I was excluded from meetings related to my job duties.

[17]      I was excluded from communications related to my job duties.

[18]      I was dismissed.

[19]      I was circumvented.

[20]      I was undermined.

[21]      I was yelled at.

[22]      I was unjustly criticized for not doing my job.

[23]      My performance was unjustly criticized.

[24]      I complained of sex discrimination in connection with Merenda in conversations with Andrew Richman (male), Chair, Compliance, Investigations, and Privacy, Nicole Morris (female), Chief Deputy City Solicitor, Camille Duchaussee (female), then Deputy Director Employee Relations, Debra Mahler (female), then Deputy Mayor, Stephanie Tipton (female), Chief Administrative Officer, Sara Stevenson (female), Integrity Officer, Hernandez,

Michael Zaccagni (male), Human Resources Director, Cara Leheny (female), Divisional Deputy City Solicitor, Lazer (male), Rob Dubow (male), Finance Director, Tumar Alexander (male), Managing Director, and Mariela Suarez (female), Deputy Director, Labor Relations. I stated that Merenda had a problem with women. I described how I was treated compared to how male employees were treated, including that Merenda ignored what female employees said and focused on what male employees said.

[25]     In April 2023, in a meeting with Anne Kane (female), Outside Investigator, I complained of sex discrimination in connection with Merenda. I stated that Merenda had a problem with women. I described how Suarez and I were treated compared to how male employees were treated, including that Merenda yelled at me, ignored what female employees said, and focused on what male employees said.

[26]     Suarez told me that she met with Kane and complained of sex discrimination in connection with Merenda.

[27]     On September 26, 2023, in a meeting with Richman, Hernandez, and Kristin Bray (female), Chief Legal Counsel, Mayor's Office, Hernandez stated that the investigation into my complaints showed no sex discrimination under the law but, instead, personality and leadership conflicts. Hernandez stated that the investigator found that Merenda had an implicit bias in how he treated women, specifically Suarez and me, and recommended that Merenda attend implicit bias training.

[28]     On October 12, 2023, in a phone call with Morris, she stated that Merenda had been warned about his behavior.

[29]     Following the above, I learned that Respondent would be promoting Meranda and the Director of Labor position would become open.

[30]    In or about December 2023, following the above, I applied for the Director of Labor position. I was qualified for the position.

[31]    In or about December 2023, I expressed my interest in and qualifications for the Director of Labor position to multiple employees, including Hernandez.

[32]    On February 8, 2024, in a meeting with Harris, Respondent failed to promote me to Director of Labor. The stated reason was that this was the Mayor's decision. She stated that it did not have anything to do with my performance. Instead of promoting me, Respondent selected Divirgilio (male). I stated that Divirgilio did not have the experience that I had. Harris stated that Lazer did not have experience when he was selected for the position either. I was more qualified and experienced for the position than the noncomplaining, male employee who was selected instead of me.

[33]    I received no explanation, including the selection criteria, as to why I was not promoted and the less qualified and experienced, noncomplaining, male employee was selected instead.

[34]    Respondent failed to promote me to Director of Labor because of my sex and/or my engaging in protected activity.

[35]    On February 12, 2024, in a phone call with Candace Chewning (female), Director of Worker Protection, she stated that she heard Merenda ask Divirgilio what he was going to do with me and Chewning.

[36]    On February 13, 2024, in a phone call with Harris, she instructed me to assist in acclimating Divirgilio to the Director of Labor position. I complained of retaliation based on my sex discrimination complaints in connection with Merenda having asked Divirgilio

what he was going to do with me and Chewning. Harris stated that it was common for departing Directors to give their recommendations to the new Director on their way out.

[37]     On February 13, 2024, in an email to Richman, I asked when I would be receiving a closure letter, per Respondent's policy, regarding the investigation into my sex discrimination complaints. I asked him to send me the closure letter, as I had not received anything following the closure meeting in September 2023.

[38]     On February 26, 2024, in a letter from Richman, he stated the following: "Pursuant to the City of Philadelphia Sexual Harassment Prevention policy, the purpose of this letter is to confirm, in writing, that it has been determined that no violation of the afore-mentioned policies occurred and that this matter is now closed."

[39]     On February 27, 2024, in an email to Richman, I stated the following: "My understanding was that there were in fact findings, yet that the investigator did not think they rose to the level of gender discrimination under the law, not our policy. During the conversation, there were findings of bias towards me and other woman, specifically Mariela. As you are aware, our policy holds our leaders to a higher standard than the law. It is misleading to say there are no findings under our policy."

[40]     I received no response to my above email.

[41]     On March 1, 2024, in a meeting with Zaccagni and Harris, Respondent terminated my employment, effective April 2, 2024. The stated reason was that Respondent was going in a different direction. I asked if the termination had anything to do with my performance, and they said it did not. I asked if my termination had anything to do with my sex discrimination complaints, and they refused to answer my question. They did not deny that I was terminated because I complained of sex discrimination.

[42]     On March 10, 2024, in a phone call with Divirgilio, he stated that he only found out that I was being terminated twenty (20) minutes before my termination meeting, and that he had refused to be in my termination meeting, because he did not want me to be terminated and was not involved in the decision to terminate my employment.  Divirgilio stated that he was instructed to have me train other employees to do the work that I had been doing.

[43]     On April 3, 2024, I received a letter dated March 1, 2024, signed by Harris, which stated the following: "[W]e feel that it is now best that we make additional changes to the Office of Labor Relations, therefore, we will be separating you from City employment."

[44]     On April 3, 2024, Respondent terminated Suarez's employment, effective April 12, 2024.

[45]     Before I engaged in protected activity, I had no indication that my job was in jeopardy.

[46]     I had no disciplinary or performance issues throughout my employment.

[47]     I was the only employee who was terminated on April 2, 2024.

[48]     Merenda remains employed with Respondent.

[49]     Respondent terminated my employment because of my sex and/or my engaging in protected activity.

[50]     Respondent failed to promote me because of my sex and/or my engaging in protected activity.

[51]     Respondent subjected me to a hostile work environment because of my sex and/or my engaging in protected activity.

[52]     I had no opportunity to remain employed with Respondent.

[53]    Other employees have complained of sex discrimination and retaliation at Respondent.

[54]    Respondent assigned my job duties and responsibilities to noncomplaining and/or male employees.  I was more qualified and experienced to perform my job duties and responsibilities than the noncomplaining and/or male employees to whom my job duties and responsibilities were assigned.

[55]    Respondent failed to remedy or prevent the sex discrimination and retaliation to which I was subjected.

[56]    Respondent failed to investigate my sex discrimination complaints.

[57]    Respondent's sex discriminatory and retaliatory conduct toward me has caused me emotional distress.

[58]    Respondent's comments and conduct evidence a bias against female and/or complaining employees.

**B.**  Respondent has discriminated against me because of my sex (female) and retaliated against me because of my engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

   __ X __    **Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101,** *et seq.* **("PFPO"), Section __ 9-1103 __ .**

5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

**_X_**    **This charge will be referred to the EEOC for the purpose of dual filing.**

6.    The Complainant seeks that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## **VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.


_5/7/24_
(Date Signed)

_Monica Marchetti Brock_
(Signature)  Monica Marchetti-Brock
redacted
Philadelphia, PA 19114

# Exhibit 2

COMMONWEALTH OF PENNSYLVANIA

GOVERNOR'S OFFICE

PENNSYLVANIA HUMAN RELATIONS COMMISSION

|  |  |  |
|---|---|---|
| | : | |
| Monica Marchetti-Brock, | : | |
| Complainant | : | |
| | : | |
| v. | : PHRC Case No. 202317223 | |
| | : | |
| City of Philadelphia, | : EEOC No. 17F202460747 | |
| Respondent | : | |
| | : | |

## **COMPLAINT**

### **JURISDICTION**

1.     Jurisdiction is pursuant to the Pennsylvania Human Relations Act 43 P.S. §§ 951-963.

### **PARTIES**

2.     The Complainant herein is:

Monica Marchetti-Brock
redacted
Philadelphia, PA  19114

3.     The Respondent herein is:

City of Philadelphia
Labor and Employment Unit
1515 Arch Street, 15th Floor
Philadelphia, PA 19102

Case 2:25-cv-06792     Document 1     Filed 12/03/25     Page 34 of 46
Page: 03 of 12                    2024-05-08 16:47:13 EDT             12155652858         From: Nancy C

o:

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

| | |
|---|---|
| COMPLAINANT: | : |
| | : |
| **MONICA MARCHETTI-BROCK** | :    Docket No. |
| | : |
| v. | : |
| | : |
| RESPONDENT: | : |
| | : |
| **CITY OF PHILADLEPHIA** | : |

1. The Complainant herein is:

   Name:        Monica Marchetti-Brock

   Address:     redacted

                Philadelphia, PA 19114

2. The Respondent herein is:

   Name:        City of Philadelphia

   Address:     1515 Arch Street
                Philadelphia, PA 19102

3. I, Monica Marchetti-Brock, the Complainant herein, allege that I was subjected to

unlawful discrimination because of my sex (female) and retaliation because of my engaging in

protected activity, as set forth below.

### Discrimination and Retaliation

#### A. I specifically allege:

   [1]        I was hired by Respondent on or about December 1, 2013

[2]     I last held the position of First Deputy Director.

[3]     I consistently performed my job duties in a highly competent manner.

[4]     I last reported to Perritti Divirgilio (male), Director of Labor.  Divirgilio reported to Sincere Harris (female), Deputy Mayor.

[5]     Before reporting to Divirgilio, I reported to Basil Merenda (male), Director of Labor.

[6]     Before reporting to Merenda, I reported to Richard Lazer (male), Deputy Mayor of Labor / Director of Labor.

[7]     On or about November 3, 2022, in a meeting with Lazer, after I learned that he was resigning, I expressed my interest in and qualifications for the soon to be open Deputy Mayor of Labor / Director of Labor. I was qualified for the position. The position was not posted. Lazer stated that Respondent would likely select Merenda (male) for the position. I asked why I would not be selected for the position. Lazer stated that he would speak with Christina Hernandez (female), Chief of Staff, Mayor's Office.

[8]     Lazer told me that Respondent wanted a male employee in the Deputy Mayor of Labor / Director of Labor position.

[9]     On November 4, 2022, in an email to Hernandez, I expressed my interest in and qualifications for the soon to be open Deputy Mayor of Labor / Director of Labor position.

[10]    On November 30, 2022, in a meeting with Hernandez, Respondent failed to promote me to Deputy Mayor of Labor / Director of Labor. The stated reason was that James Kenney (male), Mayor, felt more comfortable with Merenda (male). She stated that she spoke with Kenney, Respondent was not going to fill the Deputy Mayor role, Meranda would be the Director of Labor, and I would remain in my First Deputy Director position. Instead of

promoting me, Respondent selected Merenda (male). I was more qualified and experienced for the position than the external, male candidate who was selected instead of me.

[11]     I received no explanation, including the selection criteria, as to why I was not promoted and the less qualified and experienced, external male candidate was selected instead.

[12]     Respondent failed to promote me to Director of Labor because of my sex.

[13]     In January 2023, I began reporting to Merenda.

[14]     Merenda treated female employees, including me, differently and worse, and in a more hostile and dismissive manner, than he treated male employees.

[15]     I was ignored.

[16]     I was excluded from meetings related to my job duties.

[17]     I was excluded from communications related to my job duties.

[18]     I was dismissed.

[19]     I was circumvented.

[20]     I was undermined.

[21]     I was yelled at.

[22]     I was unjustly criticized for not doing my job.

[23]     My performance was unjustly criticized.

[24]     I complained of sex discrimination in connection with Merenda in conversations with Andrew Richman (male), Chair, Compliance, Investigations, and Privacy, Nicole Morris (female), Chief Deputy City Solicitor, Camille Duchaussee (female), then Deputy Director Employee Relations, Debra Mahler (female), then Deputy Mayor, Stephanie Tipton (female), Chief Administrative Officer, Sara Stevenson (female), Integrity Officer, Hernandez,

Michael Zaccagni (male), Human Resources Director, Cara Leheny (female), Divisional Deputy City Solicitor, Lazer (male), Rob Dubow (male), Finance Director, Tumar Alexander (male), Managing Director, and Mariela Suarez (female), Deputy Director, Labor Relations. I stated that Merenda had a problem with women. I described how I was treated compared to how male employees were treated, including that Merenda ignored what female employees said and focused on what male employees said.

[25]     In April 2023, in a meeting with Anne Kane (female), Outside Investigator, I complained of sex discrimination in connection with Merenda. I stated that Merenda had a problem with women. I described how Suarez and I were treated compared to how male employees were treated, including that Merenda yelled at me, ignored what female employees said, and focused on what male employees said.

[26]     Suarez told me that she met with Kane and complained of sex discrimination in connection with Merenda.

[27]     On September 26, 2023, in a meeting with Richman, Hernandez, and Kristin Bray (female), Chief Legal Counsel, Mayor's Office, Hernandez stated that the investigation into my complaints showed no sex discrimination under the law but, instead, personality and leadership conflicts. Hernandez stated that the investigator found that Merenda had an implicit bias in how he treated women, specifically Suarez and me, and recommended that Merenda attend implicit bias training.

[28]     On October 12, 2023, in a phone call with Morris, she stated that Merenda had been warned about his behavior.

[29]     Following the above, I learned that Respondent would be promoting Meranda and the Director of Labor position would become open.

[30]     In or about December 2023, following the above, I applied for the Director of Labor position. I was qualified for the position.

[31]     In or about December 2023, I expressed my interest in and qualifications for the Director of Labor position to multiple employees, including Hernandez.

[32]     On February 8, 2024, in a meeting with Harris, Respondent failed to promote me to Director of Labor. The stated reason was that this was the Mayor's decision. She stated that it did not have anything to do with my performance. Instead of promoting me, Respondent selected Divirgilio (male). I stated that Divirgilio did not have the experience that I had. Harris stated that Lazer did not have experience when he was selected for the position either. I was more qualified and experienced for the position than the noncomplaining, male employee who was selected instead of me.

[33]     I received no explanation, including the selection criteria, as to why I was not promoted and the less qualified and experienced, noncomplaining, male employee was selected instead.

[34]     Respondent failed to promote me to Director of Labor because of my sex and/or my engaging in protected activity.

[35]     On February 12, 2024, in a phone call with Candace Chewning (female), Director of Worker Protection, she stated that she heard Merenda ask Divirgilio what he was going to do with me and Chewning.

[36]     On February 13, 2024, in a phone call with Harris, she instructed me to assist in acclimating Divirgilio to the Director of Labor position. I complained of retaliation based on my sex discrimination complaints in connection with Merenda having asked Divirgilio

what he was going to do with me and Chewning. Harris stated that it was common for departing Directors to give their recommendations to the new Director on their way out.

[37]     On February 13, 2024, in an email to Richman, I asked when I would be receiving a closure letter, per Respondent's policy, regarding the investigation into my sex discrimination complaints. I asked him to send me the closure letter, as I had not received anything following the closure meeting in September 2023.

[38]     On February 26, 2024, in a letter from Richman, he stated the following: "Pursuant to the City of Philadelphia Sexual Harassment Prevention policy, the purpose of this letter is to confirm, in writing, that it has been determined that no violation of the afore-mentioned policies occurred and that this matter is now closed."

[39]     On February 27, 2024, in an email to Richman, I stated the following: "My understanding was that there were in fact findings, yet that the investigator did not think they rose to the level of gender discrimination under the law, not our policy. During the conversation, there were findings of bias towards me and other woman, specifically Mariela. As you are aware, our policy holds our leaders to a higher standard than the law. It is misleading to say there are no findings under our policy."

[40]     I received no response to my above email.

[41]     On March 1, 2024, in a meeting with Zaccagni and Harris, Respondent terminated my employment, effective April 2, 2024. The stated reason was that Respondent was going in a different direction. I asked if the termination had anything to do with my performance, and they said it did not. I asked if my termination had anything to do with my sex discrimination complaints, and they refused to answer my question. They did not deny that I was terminated because I complained of sex discrimination.

[42] On March 10, 2024, in a phone call with Divirgilio, he stated that he only found out that I was being terminated twenty (20) minutes before my termination meeting, and that he had refused to be in my termination meeting, because he did not want me to be terminated and was not involved in the decision to terminate my employment. Divirgilio stated that he was instructed to have me train other employees to do the work that I had been doing.

[43] On April 3, 2024, I received a letter dated March 1, 2024, signed by Harris, which stated the following: "[W]e feel that it is now best that we make additional changes to the Office of Labor Relations, therefore, we will be separating you from City employment."

[44] On April 3, 2024, Respondent terminated Suarez's employment, effective April 12, 2024.

[45] Before I engaged in protected activity, I had no indication that my job was in jeopardy.

[46] I had no disciplinary or performance issues throughout my employment.

[47] I was the only employee who was terminated on April 2, 2024.

[48] Merenda remains employed with Respondent.

[49] Respondent terminated my employment because of my sex and/or my engaging in protected activity.

[50] Respondent failed to promote me because of my sex and/or my engaging in protected activity.

[51] Respondent subjected me to a hostile work environment because of my sex and/or my engaging in protected activity.

[52] I had no opportunity to remain employed with Respondent.

[53]     Other employees have complained of sex discrimination and retaliation at Respondent.

[54]     Respondent assigned my job duties and responsibilities to noncomplaining and/or male employees. I was more qualified and experienced to perform my job duties and responsibilities than the noncomplaining and/or male employees to whom my job duties and responsibilities were assigned.

[55]     Respondent failed to remedy or prevent the sex discrimination and retaliation to which I was subjected.

[56]     Respondent failed to investigate my sex discrimination complaints.

[57]     Respondent's sex discriminatory and retaliatory conduct toward me has caused me emotional distress.

[58]     Respondent's comments and conduct evidence a bias against female and/or complaining employees.

**B.** Respondent has discriminated against me because of my sex (female) and retaliated against me because of my engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.  The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

    __X__     **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): __(a); (d)__**

    _____     Section 5.1 Subsection(s) _____

_____ Section 5.2 Subsection(s) _____

_____ Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5. Other action based upon the aforesaid allegations has been instituted by the Complainant
   in any court or before any other commission within the Commonwealth of Pennsylvania
   as follows:

   **X**     **This charge will be referred to the EEOC for the purpose of dual
   filing.**

6. The Complainant seeks that Respondents be required to:

   C. Make the Complainant whole.

   D. Eliminate all unlawful discriminatory practice(s) and procedure(s).

   E. Remedy the discriminatory effect of past practice(s) and procedure(s).

   F. Take further affirmative action necessary and appropriate to remedy the violation
      complained of herein.

   G. Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.


___5/7/24___
(Date Signed)

_Monica Marchetti Brock_
(Signature)   Monica Marchetti-Brock
redacted
Philadelphia, PA 19114

# Exhibit 3

| | |
|---|---|
| **From:** | DOJ Civil Rights - Do Not Reply |
| **To:** | Toni Murphy |
| **Subject:** | Response: Your Civil Rights Division Report - 631239-VGX from the Employment Litigation Section |
| **Date:** | Friday, September 5, 2025 12:31:01 PM |



**U.S. Department of Justice**
**Civil Rights Division**

| civilrights.justice.gov

631239-VGX

**NOTICE OF RIGHT TO SUE WITHIN 90 DAYS**

Sep 5, 2025

Monica Marchetti-Brock

murphy@consolelaw.com

Re:      Monica Marchetti-Brock v. City of Philadelphia, et al.,
EEOC Charge No. 17F-2024-60747

Dear Monica Marchetti-Brock,

You are receiving this notice because you filed the above charge(s) with the
Equal Employment Opportunity Commission (EEOC), and you or your attorney
specifically requested this notice.

Because either 180 days have passed since you filed the above charge(s), or
because the EEOC has determined that it will not be able to conclude its
administrative process within 180 days of the date it assumed jurisdiction of the
charge(s), you are hereby notified that you have the right to file a lawsuit
commencing a civil action based on the charge(s) under the following statute(s):

- Title VII of the Civil Rights Act of 1964, 42 USC. 42 U.S.C. § 2000e, et seq.

If you decide to file a lawsuit under the statute(s) identified above, **you must file
it in the appropriate court within 90 days of receiving this Notice**.  This
Notice should not be taken to mean that the Department of Justice has made a
judgment as to whether your charge is meritorious.  If you haven't already, you

may want to consult with a private attorney of your own choosing and expense.

If you have questions or wish to inspect the investigative file pertaining to this matter, please address your inquiry to the following EEOC office: Philadelphia District Office. Contact information for this office can be located at https://www.eeoc.gov/field-office/philadelphia/location.

Sincerely,

Complaint Referral Unit
Employment Litigation Section
Civil Rights Division

CC: murphy@consolelaw.com, murphy@consolelaw.com, MEY@Pietragallo.com, Damon.Johnson@EEOC.gov

## Contact

[civilrights.justice.gov](civilrights.justice.gov)

 U.S. Department of Justice Civil Rights Division 950 Pennsylvania Avenue, NW Washington, D.C. 20530-0001

 (202) 514-3847 1-855-856-1247 (toll-free) Telephone Device for the Deaf (TTY) (202) 514-0716